UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

E.J. SIERON, *et al.*,

Plaintiffs,

v.

HANOVER FIRE AND CASUALTY INSURANCE COMPANY, a subsidiary of Hanover Holdings, Inc., and THOMAS RIPPERDA, respondent in discovery,

Defendants.

Case No. 06-cv-501-JPG

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

This matter comes before the Court on cross-motions for partial summary judgment (Docs. 63, 65). The defendant, Hanover Fire and Casualty Insurance Company (Hanover), has responded to plaintiffs' motion (Doc. 68), and plaintiffs have replied to the response (Doc. 69). Plaintiffs did not file a separate response to Hanover's motion. Hanover claims, however, that they responded in their reply to its response. Hanover has thus filed a reply in opposition to the arguments raised in plaintiffs' reply (Doc. 70). Plaintiffs contend that Hanover's reply is really a sur-reply, and have moved to strike the motion pursuant to Southern District of Illinois Local Rule 7.1(c) (Doc. 71). Hanover has responded to the motion to strike (Doc. 72). For the following reasons, the Court will **GRANT** Hanover's motion for partial summary judgment (Doc. 63) and **DENY** plaintiffs' cross motion for summary judgment and plaintiffs' motion to strike (Docs. 65, 71).

**BACKGROUND**

Fire destroyed the homes of Theresa Harriel, Angela and Oka Williams, and Curtis Warner on October 20, 2005, November 11, 2005, and December 5, 2005. Harriel, the Williams, and Warner (plaintiff-applicants) obtained insurance policies from Hanover. On their applications, they initialed the following statement: "I am the owner of record and occupant of the property described above. ____ (initial)." (Doc. 64, Exs. A, B, C). They also signed this certification:

> I hereby apply for the amount to be insured and declare that the answers to the questions on this Application are complete and true to the best of my knowledge and belief. It is understood and agreed that, upon payment of the initial premium with this application, the insurance will be effective on the date of issue of the Policy.

(*Id*.).

The essential dispute in this case is whether plaintiff-applicants made material misrepresentations on their applications for insurance. Because plaintiff-applicants entered into unrecorded contracts for deed with certain entities – Harriel with Golden Properties, Inc. (Golden), the Williams with Arrow Realty, Inc. (Arrow), and Warner with E.J. Sieron (Sieron) (collectively the Sieron Entities) – Hanover claims plaintiff-applicants were not the owners of record. As plaintiff-applicants did not hold their properties subject to mortgages, Hanover also contends they falsely listed the Sieron Entities as mortgagees. Relying on an affidavit from the underwriter who approved plaintiff-applicants' applications, Ross Miller (now its current president), Hanover contends that it would not have issued the plaintiff-applicants' policies if it had known they were not owners of record. (Doc. 64, Ex. M).

Plaintiff-applicants contend that they did not materially misstate their interests in their respective properties on their insurance applications. They argue that a contract for deed is the functional equivalent of, if not the same as, a mortgage. Given their possession of the properties and other incidents of ownership, they claim they were the owners for all practical purposes. Even if

their representations were false, plaintiff-applicants claim they were not material to the risk involved or the hazard assumed. Finally, plaintiffs maintain Hanover waived its right to rescind the policies under the Illinois Conformative Amendment Rider, which states, "[I]n no event may this policy be rescinded after the policy has been in effect for one year, or on policy period, whichever is less." (Doc. 51 Ex. K at 8).

## ANALYSIS

### I.  Motion to Strike

Southern District of Illinois Local Rule 7.1(c) states: "Under no circumstances will sur-reply briefs be accepted." After reading the briefs, the Court finds that Hanover's purported sur-reply brief is, in fact, a reply brief. Plaintiffs clearly address Hanover's summary judgment arguments in their reply to Hanover's response to their motion for summary judgment. If the Court were to construe Hanover's reply as a sur-reply, it would deprive Hanover of its right to respond to these arguments – a right Hanover possesses under the Court's local rules. This ruling has no practical significance, however, because Hanover has added nothing new in its response. The Court hereby **DENIES** the motion to strike.

### II.  Hanover's Motion for Partial Summary Judgment

####   A.  Standard on Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In determining the existence of

a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596 (7th Cir. 2000).

**B. Merits**

The parties have not been able to find any cases that squarely address the issues presented in this case. For its part, Hanover relies principally on two early decisions of the Supreme Court of Illinois construing "sole and unconditional ownership" clauses in fire insurance policies: *Capps v. National Union Fire Ins. Co.*, 149 N.E. 247 (Ill. 1925) and *Pollock v. Connecticut Fire Ins. Co. of Hartford*, 199 N.E. 816 (Ill. 1936). In *Capps*, the plaintiff's insurance company refused to pay his claim based on a sole and unconditional ownership clause.[1] 149 N.E. at 248. Though the plaintiff

[1] The provision read as follows: "This entire policy shall be void if . . . the interest of the insured be other than unconditional and sole ownership." *Capps*, 149 N.E. at 248.

made no representations as to his interest in the property when applying for insurance, the court found that the insurer permissibly denied the claim because the plaintiff obtained the property through a contract for deed and had not yet fulfilled his obligations under the contract. *Id*. Affirming a number of its previous decisions, the Court held "that the vendee under an executory contract of sale has neither the legal nor equitable title to the property covered by the contract." *Id*. As the plaintiff did not have legal or equitable title, he was not the sole and unconditional owner of the property and the policy was void.

In *Pollock*, the court reaffirmed *Capps* and reached a similar conclusion. Discussing the rationale for upholding the application of sole and unconditional ownership clauses, the court said the following:

> Generally speaking, insurances against fire are made in the confidence that the assured will use all the precautions to avoid the calamity insured against, which would be suggested by his interest. The extent of this interest must always influence the underwriter in taking or rejecting the risk, and in estimating the premium. So far as it may influence him in these respects, it ought to be communicated to him. Underwriters do not rely so much upon the principles, as on the interest, of the assured; and it would seem, therefore, to be always material, that they should know how far this interest is engaged in guarding the property from loss.

*Pollock*, 199 N.E. at 818 (quoting *Columbian Ins. Co. of Alexandria v. Lawrence*, 27 U.S. (2 Pet.) 25, 49 (1829)). *Pollack* turned on the importance, from an insurer's perspective, of the nature of the insured's interest. While the court recognized that one need not be a sole and unconditional owner to have an insurable interest in a given property, it stressed the importance of the insured making clear the precise nature of his interest when applying for insurance. *Id*. at 818-19. Though old, Hanover believes *Pollock* and *Capps* demonstrate both the materiality of misstatements as to an insured's interest and that a vendee under a contract for deed is not an owner for purposes of insurance.

Plaintiffs duly observe that the force of these decisions has been undercut by the Supreme Court of Illinois' recognition of the doctrine of equitable conversion. In *Shay v. Penrose*, 185 N.E.2d 218, 219 (Ill. 1962), the court overruled one of the cases relied on in *Capps*, *Chappel v. McKnight*, 108 Ill. 570, 1884 WL 9751 (Ill. 1884). *Chappel* had held that "[a] mere contract or covenant to convey at a future time, on the purchaser performing certain acts, does not create an equitable title." 1884 WL 9751 at *3. *Shay* rejected this rule and explicitly held that "equitable conversion takes place at the instant a valid and enforceable contract is entered into and that the buyer at that time acquires an equitable title." 185 N.E.2d at 220. Under *Shay*, plaintiff-applicants clearly had equitable title to their respective properties.

Plaintiff-applicants do not dispute that they did not have legal title to their properties when they acquired insurance from Hanover.[2] They claim, however, that their equitable title made them owners for purposes of their policies. In support of their arguments that their statements as to ownership were not false, plaintiff-applicants cite a number of decisions – primarily in the area of land trusts and taxation – which recognize the fluidity of the term "owner." In *People v. Chicago Title & Trust Co.*, 389 N.E.2d 540, 544 (Ill. 1979), the Supreme Court of Illinois remarked:

> The term "owner," as applied to land, has no fixed meaning applicable under all circumstances and as to any and every enactment. It usually denotes a fee simple estate, but in Illinois it may include one who has the usufruct, control, or occupation of land with a claim of ownership, whether his interest be an absolute fee or a less estate. Title to property does not necessarily involve ownership of the property. Title refers only to a legal relationship to the land, while ownership is comparable to control and denotes an interest in the real estate other than that of holding title thereto.

(internal quotation marks and citations omitted); *see also S.R.A., Inc. v. State of Minn.*, 327 U.S.558,

---

[2] In discovery, plaintiff-applicants admitted they did not hold legal title to the properties when they applied for insurance. (Doc. 64, Exs. G, H, I).

570 (1946) (finding that a private entity which obtained ownership of the beneficial interest in property pursuant to an executory contract was not exempt from state property taxes simply because the United States retained legal title of the property in question).

In *Chicago Title & Trust Co.*, the State of Illinois sought to recover unpaid real estate taxes on various parcels of land held in land trusts; it named the trustees in their individual capacities, the trustees in their capacities as trustees, and the beneficiaries of the trust as defendants. 389 N.E.2d at 542.[3] The court held that the trust beneficiaries were the owners of the land for purposes of the land's tax liability, despite the fact that the trustees held legal title to the property. In coming to this conclusion, the court focused on the "key elements of ownership," – in its judgment control and the right to enjoy the benefits of property – and the rationale behind the state's imposition of taxes. Because the trust beneficiaries were the "recipient[s] of all the benefits of the property and controll[ed] the management of the property" they were the parties "most benefited by the ends of taxation, regardless of who holds the title." *Id*. For purposes of taxation, the court concluded "true ownership" lied with the beneficiaries. *Id*. at 545.

The Court distinguished revenue collection cases, which are concerned "with the realities

---

[3] As explained in *Chicago Title & Trust Co.*,
> In a land trust the legal and equitable title lies with the trustee and the beneficiary retains what is referred to as a personal property interest. It is important to note, however, that though referred to as personal property, most of the usual attributes of real property ownership are retained by the beneficiary under the trust agreement. In fact, the only attribute of ownership ascribed to the trustee is that relating to title, upon which third parties may rely in transactions where title to the real estate is of primary importance. A third party, even the State, may generally rely on the title of the trustee in such cases.

389 N.E.2d at 543 (citations omitted).

of ownership" rather than "the refinements of title," and other disputes where the "primary issue involves ownership rather than title," from disputes where the primary concern is title. *Id*. at 543-44 (citing *Corliss v. Bowers*, 281 U.S. 376, 378 (1930)); see *E.g., Immanuel Evangelical Lutheran Church of Springfield v. Dept. of Revenue*, 642 N.E.2d 1344, 1347 (Ill. App. Ct. 4th Dist. 1994) (finding that the buyer under a contract for deed, rather than the seller, was the owner of property for purposes of determining whether a state tax exemption for parsonages was applicable). According to the court, disputes primarily concerned with title include those involving lien priority, *Chicago Fed. Sav. & Loan Ass'n v. Cacciatore*, 185 N.E.2d 670 (Ill. 1962), the issuance of tax deeds, *First Lien Co. v. Marquette Nat'l Bank*, 306 N.E.2d 23 (Ill. 1973), mechanics liens, *Dunlop v. McAtee*, 333 N.E.2d 76 (Ill. App. Ct. 2d Dist. 1975), dram shops, *Robinson v. Walker*, 211 N.E.2d 488 (Ill. App. Ct. 1st Dist. 1965), and tort liability, *Brazowski v. Chicago Title & Trust Co.*, 280 Ill. App. 293 (Ill. App. Ct. 1st Dist. 1935).

The Court's research has not disclosed any case that has specifically addressed whether the dispute presented here "involves ownership rather than title." *Chicago Title & Trust Co.*, 389 N.E.2d at 544. At the very least, *Pollack* suggests that title is more important in this context than it is in the tax context. In that case, the court found the distinction between a vendee under a contract for deed and a title holder significant enough to justifiably influence "the underwriter in taking or rejecting the risk, and in estimating the premium." *Pollock*, 199 N.E. at 818. This conclusion is logical, for one can certainly conceive why an effectively judgment proof vendee would take less care of his home, or be more likely to walk away from it, knowing the deed was in the possession of another with the lion's share of the equity. Whether the distinction is significant in fact is largely beside the point here, because plaintiff-applicants did not just say they were

owners; they said they were "owner[s] of record."

The phrase "owner of record," unlike the term "owner," is not subject to different interpretations depending on context. Blacks Law Dictionary defines "owner of record" as "A property owner in whose name the title appears in the public records." *Blacks Law Dictionary* 1138 (8th ed. 2004). Though the cases rarely make it explicit, it is clear that this is the one and only definition of the phrase in Illinois. *See, e.g., Ciacco v. City of Elgin*, 407 N.E.2d 108, 114 (Ill. App. Ct. 2d Dist. 1980); *Wheaton Coll. v. Dept. of Revenue*, 508 N.E.2d 1136, 1137 (Ill. App. Ct. 2d Dist. 1987); 55 ILCS 5/5-30003 (defining owner of record as "The person or corporation or other legal entity in whose name the property appears on the records of the County Recorder."); *see also In re Gladstone Glen*, 628 F.2d 1015, 1018 (7th Cir. 1980) ("We understand 'legal owner' to mean the owner of record."); *In re Van Quach*, 187 B.R. 615, 620 (Bankr. N.D. Ill. 1995). Despite their use, possession, and control of their respective properties, the plaintiff-applicants were *not* owners of record. Plaintiff-applicants had an insurable interest in their homes, and they could have attempted to insure that interest if they wished. The simple fact is, they did not; they chose to represent themselves as owners of record. Because they were not owners of record, these statements were false.

The remaining question is whether these statements were material. As Hanover notes (and plaintiff-applicants do not dispute), materiality "is determined by whether or not reasonably careful and intelligent persons would regard the facts as stated to substantially increase the chances of the event insured against, so as to cause a rejection of the application." *Small v. Prudential Life Ins. Co.*, 617 N.E.2d 80, 83 (Ill. App. Ct. 1st Dist. 1993). Important for the present purposes, *Small* held, "Materiality may be established by the testimony of the insurer's underwriter." *Id*. In his affidavit,

Miller stated that he would not have underwritten plaintiff-applicants' policies had he known plaintiff-applicants were vendees under contracts for deed. (Doc. 64, Ex. M). This is competent evidence, *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006), which plaintiff-applicants have not contradicted with any evidence of their own. All plaintiff-applicants have done is cite to the cases mentioned above, and emphasized the importance of use and possession in determining ownership in other contexts.

Plaintiff-applicants have not cited any cases dealing specifically with fire insurance or suggesting that a vendee under an executory contract is an owner of record. In the context of fire insurance, the Supreme Court of Illinois, quoting Justice Marshall, has said, "Underwriters do not rely so much upon the principles, as on the interest, of the assured; and it would seem, therefore, to be always material, that they should know how far this interest is engaged in guarding the property from loss." *Pollock*, 199 N.E. at 818 (quoting *Lawrence*, 27 U.S. (2 Pet.) at 49). Several courts have found misrepresentations as to the identity of an owner material in other contexts as well. *See In re Van Quach*, 187 B.R. at 617; *see also Safeway Ins. Co. v. Duran*, 393 N.E.2d 688, 690 (Ill. App. Ct. 1 Dist. 1979) ("The misrepresentation as to the identity of the owner of a vehicle materially affects the risk and hazard assumed by the insurer."); *Gov't Employees Ins. Co. v. Dennis*, 232 N.E.2d 750, 754 (Ill. App. Ct. 2d Dist. 1967) (same).

While plaintiff-applicants have offered cases that undercut the force of *Capps* and *Pollack* with respect to a contract vendee's having equitable title, they have not presented any case discounting their holdings on the significance of an insured misstating his interest in the property he seeks to have insured. The Supreme Court of Illinois has held that seemingly minor distinctions of this sort might reasonably cause an insurer to decline to insure an individual. *Pollack*, 199 N.E.

at 818. Given *Pollock* and *Capps* and plaintiff-applicants' failure to offer any evidence contradicting Miller's affidavit, the Court finds that they materially misrepresented information on their insurance application. For this reason, the Court will **GRANT** Hanover's motion for partial summary judgment and **DENY** plaintiffs' cross motion.

**III. Hanover's Power to Rescind**

The Illinois Conformative Amendment Rider to the policy states, in pertinent part, "[I]n no event may this policy be rescinded after the policy has been in effect for one year, or on policy period, whichever is less." (Doc. 51, Ex. K at 8). Plaintiff-applicants argue that Hanover waived its right to rescind the policy by not acting within one year from the dates of their losses. The parties have not briefed the issue fully and there appear to be a number of issues in this case that could potentially complicate the inquiry. Accordingly, the Court declines to address the issue at this time.

**CONCLUSION**

The Court hereby **GRANTS** Hanover's motion for partial summary judgment (Doc. 63) and **DENIES** plaintiffs' motion for partial summary judgment (Doc. 65) and motion to strike (Doc. 71).

**IT IS SO ORDERED.**

**DATED: April 27, 2007**

**s/ J. Phil Gilbert**
**J. PHIL GILBERT**
**DISTRICT JUDGE**